IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DARNIKA AMERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 7:15-cv-00003-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.    Introduction**

The plaintiff, Darnika Amerson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Amerson timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Amerson was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a ninth grade education. (Tr. at 45, 131.) Her past work experiences include employment as a fast food cook/shift leader, a

1

fast food worker, and a hand packager. (Tr. at 21, 56-61.) Ms. Amerson claims that she became disabled on August 11, 2010. (Tr. at 18.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Amerson meets the insured status requirements of the Social Security Act through March 31, 2012. (Tr. at 17.) She further determined that Ms. Amerson has not engaged in SGA since August 11, 2010, the alleged onset of her disability. (Tr. at 18.) According to the ALJ, Plaintiff's mild emphysema and asthma with episodic asthmatic bronchitis, moderate lumbar and cervical degenerative disc disease, depression/anxiety, and borderline intellectual functioning are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 34.) The ALJ determined that Ms. Amerson has the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the additional limitations described herein. The

claimant can lift and carry up to 10 pounds frequently and 20 pounds occasionally. During the course of an eight-hour workday, she can sit for two hours at a time, six hours in total; stand for one hour at a time, three hours in total; and walk for one hour at a time, three hours in total. She can use her bilateral upper extremities for frequent handling, fingering, and feeling and occasional reaching and pushing/pulling. She can occasionally use her bilateral lower extremities to operate foot controls. She can occasionally balance and kneel. She should never climb stairs, ramps, ropes, ladders and scaffolds. She should never stoop, crouch or crawl. She should never be exposed to extreme cold, heat, vibration or unprotected heights. She can occasionally be exposed to humidity and pulmonary irritants. The claimant can perform simple, routine, repetitive work that does not require reading. She should have no more than occasional interaction with members of the public. She can maintain attention and concentration for two-hour periods throughout the course of an eight-hour workday.

(Tr. at 40.)

According to the ALJ, Ms. Amerson is unable to perform any of her past relevant work, she is a "younger individual aged 18-49," she has a "limited education," and she is able to communicate in English, as those terms are defined by the regulations. (Tr. at 43-44.) The ALJ determined that the "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills . . . ." (Tr. at 44.) Because of Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national

economy that she can perform, such as hand grinder, assembler of small products, and electronics worker. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from August 11, 2010, through the date of this decision . . . ." (Tr. at 45.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Plaintiff alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ erred in finding she did not meet Listing 12.05C (mental retardation) at step three of the sequential evaluation process. Second, Plaintiff contends that the ALJ erred in giving greater weight to the opinion of Dr. Garner, the non-examining medical expert, than to the opinions

of two consultative examining physicians, Donald W. Blanton, Ph.D., and Alan D. Blotcky, Ph.D.

### A.    Listing 12.05C (mental retardation)

Plaintiff contends she meets the requirements of Listing 12.05(C) pertaining to mental retardation. A plaintiff is conclusively presumed to be disabled if she meets or equals the level of severity of a listed impairment, or Listing. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). In order to meet a Listing, the plaintiff must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets *some* of the criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885 (1190). The plaintiff bears the burden of demonstrating that she meets a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

Listing 12.05 provides, in pertinent part:

Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

Thus, to satisfy Listing 12.05C, a claimant must show the following: (1) deficits in adaptive functioning that initially manifested during the developmental period (prior to age 22); (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) an additional impairment other than intellectual functioning that imposes an additional and significant work related limitation of function. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00, 12.05; *see also Crayton*, 120 F.3d at 1219-20.

Here, the ALJ found that although Plaintiff had IQ scores below 70, she failed to show she met the deficits in adaptive functioning requirement necessary to meet Listing 12.05(C), and instead the ALJ found that she suffers from borderline intellectual functioning. (Tr. at 38). Ms. Amerson was examined by two consultative examiners, Dr. Blotcky on July 21, 2011, at the request of Vocational

Rehabilitation Services, and Dr. Blanton on March 14, 2012, at the request of Plaintiff's attorney. Dr. Blotcky administered to Plaintiff the Wechsler Adult Intelligence Scale (WAIS-IV) IQ test, which yielded a full scale IQ of 57. (Tr. at 558-61.) Nine months later, Dr. Blanton again administered the WAIS-IV to Plaintiff, which yielded a full scale IQ score of 65. (Tr. 601-05). Although Plaintiff had IQ scores of below 70, this merely creates a rebuttable presumption "of a fairly constant IQ throughout [a claimant's] life." *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 983 (11th Cir. 2013) (quoting *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (explaining that, absent evidence of sudden trauma that could cause retardation, a claimant who presents a valid IQ score need not also present evidence that her mental impairment arose before age 22)). Importantly, however, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Id.* at 983-84 (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)). *See also Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (stating that the ALJ may disregard IQ test results that are inconsistent with other record evidence because the regulations require the ALJ to examine intelligence tests and other evidence, such as the medical report and the claimant's daily activities and behavior). The ALJ pointed to such evidence in this case.

Perhaps most importantly, the ALJ noted that Plaintiff maintained employment as a fast food cook/shift leader. (Tr. at 40, 56-61, 112-13.) Plaintiff described her duties as cooking burgers, fries, and hot dogs, and made a statement that she managed others. (Tr. at 56-58.) Indeed, she stated that as a shift leader, she managed four people to see that they performed their duties correctly. (Tr. at 58.) She also stated that she trained for three months to learn the job of shift leader. (*Id.*) Further, the vocational expert ("VE") concluded this past work as a shift leader was semi-skilled. (Tr. at 58-60.) The Eleventh Circuit has found that work involving the management of others is inconsistent with exhibiting the deficits in adaptive functioning necessary to meet Listing 12.05C. *See Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 873-74 (11th Cir. 2014). Therefore, the ALJ properly identified the plaintiff's work history as evidence that supported a finding she did not meet the deficits in adaptive functioning requirement of Listing 12.05(C).

The ALJ also noted that Plaintiff's school records did not indicate she was enrolled in special education classes. (Tr. at 500). Additionally, Plaintiff's school records included test and achievement scores that were consistent with borderline or low average intelligence. (Tr. at 68, 75, 500-01).

The ALJ also relied on the daily activities Plaintiff reported she could do on her function report, as well as her testimony at her hearing as to what she could do on a daily basis. On her function report, Plaintiff indicated that she could manage household finances and pay bills, count change, read and write, drive, shop, get along with others, and follow written instructions "well" and spoken instructions "very well." (Tr. at 303, 305). Plaintiff testified at her hearing that she helped her daughter, who was in sixth grade at the time, with her homework. (Tr. at 104). She said that her oldest daughter, who was 24 at the time, occasionally helped her with errands, but that she only did so when she called her. (Tr. at 105.) She further stated that she taught her daughter how to prepare several dishes. (*Id.*) The ALJ noted that Plaintiff's testimony at her hearing was articulate and revealed no obvious problems with comprehension or expression.

The ALJ discussed several other facts that she found relevant in concluding that Plaintiff did not suffer adaptive deficits to the extent necessary to qualify for Listing 12.05(C). She noted that Plaintiff testified at her hearing that she can walk half a mile (tr. at 100), and noted that someone with mild mental retardation would not be able to express the distance she can walk in terms of miles. (Tr. at 21.) The ALJ also noted that Plaintiff drove alone to the several appointments with consultative examiners, which were located at offices a considerable distance from

her home. (Tr. at 30.) The ALJ discussed the fact that Plaintiff has five children as a single mother, and serves as head of household and primary caregiver for her youngest child through present. (Tr. at 37.) The ALJ found that these factors indicate that Plaintiff does not have deficits in home living, self-direction, self-care, communication and interpersonal relations. (Tr. at 39.) She further opined that Plaintiff uses Vocational Rehabilitation Services and lives in government housing, indicating effective use of community resources. (*Id.*)

Furthermore, Dr. Garner, the non-examining medical expert, reviewed the entire medical record and testified that in her profession opinion Plaintiff was not mentally retarded. (Tr. at 68.) Dr. Garner explained that the totality of evidence, including Plaintiff's school records, would not substantiate a diagnosis of mental retardation prior to age 22. (Tr. at 68.) For example, as Dr. Garner testified, Plaintiff scored a 75 on the Otis-Lennon School Ability Test, which indicates borderline intellectual functioning, not mental retardation. (Tr. at 38.) Dr. Garner also noted that other rankings on standardized tests Plaintiff took at the ages of 10 and 13 indicated borderline to average functioning. (*Id.*) The ALJ gave Dr. Garner's opinion significant weight. (Tr. at 31.)

While both consultative examiners, Drs. Blotcky and Blanton, diagnosed Plaintiff as mildly mentally retarded, the ALJ ultimately assigned little weight to

these opinions. In questioning Dr. Blotcky's findings, the ALJ stated: "[Ms. Amerson] demonstrated evidence of good adaptive functioning in terms of her ability to care for herself and her home and children, as well as her ability to drive and obtain a driver's license via oral examination. This level of functioning suggests that the claimant was less limited than her IQ score would suggest." (Tr. at 27). She also noted that Dr. Blotcky did not explain how "the good adaptive functioning evident in the record could have possibly produced IQ scores in the 50s suggestive of profound deficits and lack of independence." (*Id.*) The ALJ also gave little weight to Dr. Blanton's report, explaining, "The claimant is independent in care, has no difficulty in communicating, and has a history of semi-skilled responsible work. Moreover, Dr. Garner testified about these issues and gave good reasons not to accept the statement." (Tr. at 30-31). She also found that Dr. Blanton's opinion that Plaintiff demonstrated deficits in communication, self-care, work and functional academic skills was conclusory and not supported in the narrative of his report. (Tr. at 30.) Even if the ALJ were to have accepted Drs. Blanton and Blotcky's diagnoses of mental retardation, those diagnoses are insufficient, standing alone, to show that Plaintiff meets Listing 12.05(C). *See* 20 C.F.R. § 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on

14

a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria of the listing.").

Plaintiff identifies evidence that she argues supports a finding that she suffers from the deficits in adaptive functioning requirement of Listing 12.05C. She emphasizes that her school records indicate that she repeated seventh grade and quit school during ninth grade. (Tr. at 500.) However, the ALJ acknowledged that Plaintiff withdrew from school, but also noted that Plaintiff had her first child during the same time period that she quit school, and a second child soon thereafter, which could indicate that her decision to quit school was not necessarily due to intellectual difficulties but could be due to the stress of caring for an infant as a single mother. (Tr. at 38.) Plaintiff also emphasizes that according to testing on the Wide Range Achievement Test administered by Dr. Blanton in March 2012, she reads and spells on a third grade level and does arithmetic on a fourth grade level. (Tr. at 603.) She points out that while she said on her function report that she can pay bills and count change, she also said that she cannot handle a savings account or a money order. (Tr. at 303.) She emphasizes that she testified at her hearing that a friend helped her fill out her function report (tr. at 96), which she argues undermines the ALJ's conclusion that it appeared from her function report that she had no difficulty understanding instructions or following the directions on

the function report. Plaintiff also maintains that she was in special education classes in fifth grade and another year (a claim that is contradicted by Plaintiff's school records); that she had to take the drivers license test six times before passing it, and that she has never managed her own finances and that her older daughters or her mother have always managed her finances for her.

However, Plaintiff's reference to this evidence is irrelevant, given the standard by which this Court must review the ALJ's decision. The issue before this Court is not whether there is substantial evidence within the record to support a finding that Plaintiff meets the deficits in adaptive functioning requirement of Listing 12.05C. Rather, the issue before this Court is whether there is substantial evidence within the record to support the ALJ's decision that Plaintiff lacked the necessary deficits in adaptive functioning to meet Listing 12.05C. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Indeed, even if the evidence of record preponderates against the ALJ's findings, this Court must still affirm the ALJ's decision if substantial evidence supports her findings. *See id.*; *Parker*, 793 F.2d at 1181 ("'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'") (quoting *Consolo*, 383 U.S. at 620); *Miles*, 84 F.3d at 1400. As established above, substantial evidence supports the ALJ's finding

that Plaintiff did not meet the deficits in adaptive functioning requirement of Listing 12.05C. *See Harris v. Comm'r. of Soc. Sec.*, 2009 WL 1426754 (11th Cir. May 22, 2009) (claimant's ability to hold several jobs, dress and bathe, manage money, read, and communicate effectively provided evidence that claimant did not suffer from mental retardation). Thus, whether the record contains other evidence that could suggest Plaintiff met the deficits in adaptive functioning requirement of Listing 12.05C is irrelevant.

In sum, the Court is of the opinion that the ALJ's decision that Plaintiff did not meet Listing 12.05(C) at step three of the sequential evaluation process is supported by substantial evidence.

### B. Weight to Opinions of Two Consultative Examiners and Non-Examining Medical Expert

Contrary to Plaintiff's contention, the ALJ did not err in assigning more weight to Dr. Garner's opinion than she assigned to the opinions of Drs. Blotcky and Blanton. The weight to be afforded a medical opinion regarding the nature and severity of a plaintiff's impairments depends, among other things, upon the examining and treating relationship the medical source had with the plaintiff, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The Eleventh Circuit has stated that,

"although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)). Additionally, while the opinion of a non-examining medical source cannot, in itself, constitute substantial evidence to support an ALJ's decision, it can certainly be a component of the substantial evidence that supports an ALJ's decision. *See Wilkinson v. Comm'r of Soc. Sec.*, 289 F. App'x 384, 386 (11th Cir. 2008).

The evidence in this case, as described in the above section, supports Dr. Garner's opinion that Plaintiff does not meet the listing for mental retardation and conflicts with the diagnoses of Drs. Blotcky and Blanton.  Dr. Garner testified that she "absolutely disagreed" with Dr. Blanton's opinion that Plaintiff was severely limited in the areas of communication, self-care, and work, as there was no evidence of such limitation in the record. (Tr. at 38.) The ALJ did not give undue weight to the opinion of Dr. Garner because she did not rely solely on that opinion in deciding that Plaintiff did not meet the listing. Indeed, the ALJ cited substantial evidence in support of her conclusion, as described above: including that Plaintiff held down a job as a shift leader, where she managed other employees; is able to

drive long distances alone; is the primary caregiver for five children; is responsible for the financial affairs of the family as she is the one who pays the bills; admittedly understands verbal and written instructions well; shops, cooks, and runs errands; can read and write; and is able to help her sixth grade daughter with her homework. In sum, because other evidence of record is consistent with Dr. Garner's findings and inconsistent with Drs. Blotcky and Blanton's findings, it was not error for the ALJ to accord greater weight to the former and lesser weight to the latter.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Amerson's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 21, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704